## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

United States of America,

                Plaintiff,

v.

Dean Ray Peters,

                Defendant.

Criminal No. 06-445 (DSD/JJG)

**AMENDED REPORT AND RECOMMENDATION**[1]

---

### APPEARANCES

John Marti, Assistant United States Attorney, for Plaintiff United States of America

Caroline Durham, Esq., for Defendant Dean Ray Peters

---

JEANNE J. GRAHAM, United States Magistrate Judge

The above-entitled matter is before the undersigned Magistrate Judge of the District Court on the parties' pretrial motions for discovery. This matter is scheduled to be tried before United States District Court Senior Judge David S. Doty on April 30, 2007. The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

---

[1] This Amended Report & Recommendation contains two revisions to the original Report and Recommendation (Doc. No. 21). First, pursuant to further communication with the chambers of the presiding District Judge, this matter is set for trial on April 30, 2007. Thus, the trial date stated in the Introduction has been corrected. Second, the deadlines for filing objections to this Report & Recommendation and filing responses to any objections have been revised as follows: Defendant may object to this Report and Recommendation by filing and serving specific, written objections on or before Friday, April 20, 2007. The Government may file any response to the defendant's objections, if any, on or before Wednesday, April 25, 2007.

## I.     INTRODUCTION

Defendant Peters is charged with one count of aiding and abetting mail fraud in violation of 18 U.S.C. §§ 1341 and 2.  Specifically, Defendant Peters is alleged to have aided and abetted Amanda Michelle Tretsven in a scheme and artifice to deliver through Federal Express, a commercial interstate carrier, closing documents relating to an allegedly fraudulent acquisition of Tretsven's parents' home.  Mr. Peters was arraigned on March 2, 2007, and has remained in federal custody since that time.

This Court held a pretrial motions hearing on March 21, 2007, at which Defendant was present and represented by counsel.  Both parties filed pretrial motions.  At the March 21 hearing, one witness testified for the Government: Federal Bureau of Investigation Special Agent Doug Dvorak.  The Government offered one exhibit during the hearing, a copy of an "Advice of Rights" form bearing the defendant's signature.  This exhibit was marked and admitted by the Court for the purposes of the hearing.  Neither party requested permission to file post-hearing memoranda.  The Court has addressed the parties' non-dispositive motions in a separate Order.  Defendant's two dispositive motions are addressed herein.

## II.     FINDINGS OF FACT

1. FBI Special Agent Dvorak ("Dvorak") was assigned to transport the defendant, Dean Ray Peters ("Peters"), from the Anoka County Jail, where he was in the custody of the Anoka County Sheriff, to the United States Federal Courthouse in Minneapolis, Minnesota on February 28, 2007, for his first appearance before the Magistrate Judge on the Indictment in this case.

2. Dvorak and another Special Agent, Christopher Langert ("Langert"), traveled to the Anoka County Sheriff's Department on February 28, 2007, in an FBI vehicle, where they identified themselves and told Peters they had a warrant for his arrest.

3. Peters asked Dvorak why he was being arrested, and Dvorak told Peters they would tell him why "in a bit."

4. Dvorak proceeded to search Peters. Dvorak read Peters his *Miranda* rights "one by one," and then obtained Peter's signature on an "Advice of Rights" form.

5. The "Advice of Rights" form states:

> Before we ask you any questions, you must understand your rights.
> You have the right to remain silent.
> Anything you say can be used against you in court.
> You have the right to talk to a lawyer for advice before we ask you any questions.
> You have a right to have a lawyer with you during questioning.
> If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
> If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

6. Peters reviewed the "Advice of Rights" form and signed it below the statement: "I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present."

7. Dvorak and Langert also signed and dated the "Advice of Rights" form.

8. Peters was then handcuffed and led to the FBI vehicle, where he was placed in the back seat on the passenger side. Dvorak sat beside Peters in the back seat. Langert drove the vehicle.

9. The drive to the Federal Courthouse took approximately twenty-five to thirty minutes. For most of the drive, Dvorak asked Peters questions and Peters provided answers, including whether Peters knew about Amanda Mann, and if he remembered her selling a house. Dvorak told Peters that Ms. Mann had sold the house out from under her parents. Dvorak observed that Peters was upset about hearing this information.

10. Peters told Dvorak that he had notarized the sale of the home, but he would not have done so if he had known this information, and stated it was a terrible thing to do. Peters repeated these statements several times.

11. At no time during the ride did Peters give an indication that he wanted an attorney or make a request that the questions stop. Dvorak made no threats or promises to Peters to elicit responses from Peters.

12. Dvorak found Peters to be coherent and cooperative during the conversation, and found him to present a demeanor that was appropriate for conversing. Dvorak and Langert engaged in no purposeful delay in proceeding to the Federal Courthouse.

13. Sometime later on the same day, Dvorak was assigned the task of escorting Peters to the U.S. Marshal's office to wait until his First Appearance hearing began. While escorting Peters in an elevator, the defendant told Dvorak that he had something else to say. Dvorak asked Peters if he remembered his rights, as he had been told them earlier at the Anoka County Jail, and told Peters he was still subject to those rights. Peters told Dvorak that he remembered them and that he understood the rights.

14. Peters then voluntarily repeated much of what he said in the car, and that Amanda Mann's parents sold their house on a deed for contract.

15. Once Dvorak and Peters were in the U.S. Marshal's office, Peters again spoke to Dvorak without prompting. This time, Peters stated that Ms. Mann had performed most of the title work on her parents' home and had made contact with David Ellison two-to three times a day to get the transaction done.

16. None of the conversations between Dvorak and Peters occurred in a formal interview room. Dvorak testified that he asked Peters questions after reading him his *Miranda* rights "in case he ha[d] anything to say."

## III. DISCUSSION

Defendant Peters originally filed two separate suppression motions, Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 16) and Defendant's Motion to Suppress Statements, Admissions, and Answers (Doc. No. 17). At the March 21 hearing, Peters' counsel orally withdrew the first motion seeking to suppress evidence obtained by search and seizure. Thus, only the second motion remains pending before the Court.

Defendant seeks the suppression of all statements he made prior to, during, and after his arrest claiming that any such statements were made without the benefit of counsel in violation of his Fifth and Sixth Amendment rights, and that such statements, admissions, or answers were not given freely and voluntarily, thereby violating his Fourth Amendment and Fifth Amendment rights.[2]   The Court first

---

[2] The Court noted the lack of specificity in defendant's suppression motion despite having possession of Special Agent Dvorak's report regarding his transport and interview of the defendant.

addresses the defendant's waiver of his *Miranda* rights.  The Fifth Amendment prohibits the use of self-incriminating statements obtained during custodial interrogation, unless there is a voluntary, knowing and intelligent waiver of the defendant's *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436 (1966).  Under *Miranda*, before questioning suspects, law enforcement officials must inform them that: (1) they have the right to remain silent; (2) their statements may be used against them at trial; (3) they have the right to the presence of an attorney during questioning; and (4) if they cannot afford an attorney, one will be appointed.  *Id.* at 478-79.  The need to give a *Miranda* warning arises when: (1) the defendant is in custody; and (2) is interrogated.  *See United States v. Griffin*, 922 F.2d 1343, 1347 (8th Cir. 1990).  The Government has the burden to prove that a defendant voluntarily, knowingly, and intelligently waived his *Miranda* rights.  *See Moran v. Burbine*, 475 U.S. 412, 421-22 (1986)); *Miranda*, 384 U.S. at 475.   A waiver is knowing and intelligent when it is made with a full awareness of both the nature of the right being abandoned and the consequences of abandoning the right. *Thai v. Mapes*, 412 F.3d 970, 977 (8th Cir. 2005) (*citing Moran* 475 U.S. at 421).  A waiver is voluntary if it is the product of the suspect's free and deliberate choice and not of intimidation, coercion, or deception.  *Id.*  "Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that one's *Miranda* rights have been waived." *Moran*, 475 U.S. at 421.  To invoke one's

---

*See United States v. Quiroz*, 57 F.Supp.2d 805, 822-23 (D.Minn. 1999) (denying boilerplate motion to suppress for failure to meet procedural requirements of specificity).  While the Court allowed the improperly pled motion to proceed, it did not permit line-by-line testimony of the entire conversation between Special Agent Dvorak and the defendant.  The Court permitted counsel to question Special Agent Dvorak on topics relevant to any threats or promises made by law enforcement.

right to remain silent, one must unequivocally express one's desire to remain silent. *Simmons v. Bowersox*, 235 F.3d 1124, 1131 (8th Cir. 2001).

The evidence before the Court indicates defendant Peters was properly advised of his rights, and that he gave a knowing and voluntary waiver of those rights prior to the commencement of any interrogation by Special Agent Dvorak. Upon first making contact with Peters, Dvorak told Peters he had a warrant for his arrest and informed Peters of his rights prior to directing any other questions to or responding to any questions from Peters. The "Advice of Rights" form used by Dvorak to inform Peters of his right to remain silent and his right to counsel, contained all of the necessary elements to fully inform the defendant of his rights. Dvorak read Peters each of his rights and Peters reviewed the "Advice of Rights" form himself prior to signing the form indicating his understanding of his rights and his intention to waive those rights. Defendant Peters was not handcuffed prior to waiving his rights, nor was he coerced, intimidated, or threatened by law enforcement officers in an effort to obtain a waiver of his rights. Moreover, the defendant is purportedly a businessman, and all indications are that he was capable of comprehending the nature of his rights and that he had an understanding of the consequences of his waiver of his rights. Under the totality of these circumstances, the Court concludes the defendant made a knowing, intelligent and voluntary waiver of his rights prior to any questioning by law enforcement officers.

The Court next examines the specific statements defendant Peters made during the transport. Defendant Peters contends these statements were not made voluntarily. In determining whether a statement is voluntary, the court must consider the totality of the circumstances. *United States v. Bordeaux,* 980 F.2d 534, 538 (8th Cir.1992); *United States v. Casal,* 915 F.2d 1225, 1228 (8th

Cir.1990). A statement is not voluntary if "pressures exerted upon the suspect have overborne his will." *United States v. Meirovitz,* 918 F.2d 1376, 1379 (8th Cir.1990) (citing *United States v. Jorgensen,* 871 F.2d 725, 729 (8th Cir.1989) for the "overborne will" test). The two factors that must be considered in applying the "overborne will" doctrine are "the conduct of the law enforcement officials and the capacity of the suspect to resist pressure to confess." *Id.* (citing *Jorgensen* and *Colorado v. Connelly,* 479 U.S. 157 (1986)). A statement is not constitutionally involuntary unless "the police extorted it from the accused by means of coercive activity." *Jenner v. Smith,* 982 F.2d 329, 333 (8th Cir.1993) (quoting *United States v. Rohrbach,* 813 F.2d 142, 144 (8th Cir.), *cert denied,* 482 U.S. 909 (1987)). The Supreme Court has held that coercive police activity is a necessary predicate to the finding that a confession is not "voluntary" within the meaning the Due Process Clause of the Fourteenth Amendment. *Colorado v. Connelly,* 479 U.S. 157, 169-70, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

Here, considering all of the circumstances, the Court concludes defendant Peters voluntarily made his statements. First, the defendant was advised of his *Miranda* rights. *See United States v. Mendoza*, 85 F.3d 1347, 1350 (8th Cir.1996) (noting the fact that *Miranda* warnings were given "weighs in favor of a voluntariness finding"). Defendant Peters was placed in the FBI vehicle shortly after he waived his rights. Peters was aware of these rights when he answered Special Agent Dvorak's questions. The car ride lasted only twenty-five to thirty minutes, and the credible evidence indicates that Peters was coherent and displayed an appropriate demeanor and affect for the entire duration of the ride. At no time did Peters indicate he wanted an attorney or request that the questioning cease. Neither Dvorak or Langert made any threats or promises to Peters, or otherwise attempted to coerce

or intimidate him into making the statements that he made during the car ride. Defendant's suggestion that the location of the interrogation in the FBI vehicle rather than an interview room was coercive is unavailing. *See United States v. Murphy*, 107 F.3d 1199, 1205-06 (6th Cir. 1997) (rejecting mentally challenged defendant's assertion that his placement into the backseat of a police car was inherently coercive and reiterating the test is totality of the circumstances). In sum, from the totality of the circumstances, the Court finds no evidence that the will of Defendant Peters was overborne when he spoke to Dvorak and Langert in the FBI vehicle during his transport from the Anoka County jail to the Federal Courthouse in Minneapolis.

The Court also concludes that the exchanges between Peters and Dvorak that occurred after they arrived at the Federal Courthouse were initiated by Peters. The Court finds Peters' statements were not offered in response to interrogation, and if they were, they were voluntarily offered by Peters. A statement made by a suspect that is voluntary and not in response to interrogation is admissible with or without the giving of *Miranda* warnings. *United States. v. Head*, 407 F.3d 925, 928 (8th Cir. 2005); *see also Rhode Island v. Innis,* 446 U.S. 291, 301 (1980) (holding that interrogation is express questioning, words or actions that the police should know are reasonably likely to elicit an incriminating response). Nonetheless, when Peters spontaneously stated that he had one more thing to say, Dvorak stopped Peters from speaking further and asked the defendant if he remembered the rights that he had been advised of earlier that day. Dvorak advised Peters that he was still subject to those rights. Peters indicated that he understood, and then proceeded to make additional statements to Dvorak regarding Amanda Mann and the events surrounding the deed for contract on her parents' home. Under these circumstances, the Court concludes the defendant's statements made at the

Federal Courthouse were voluntarily made, and the Court finds no evidence that Peters' will was overborne during his courthouse communications with Dvorak. Accordingly, defendant's request for an order suppressing all statements he made prior to, during, and after his arrest should be denied.

## IV.     RECOMMENDATION

Based upon the parties' submissions to the Court, the hearing testimony, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 16) be **STRICKEN** from the docket in light of defendant's withdrawal of the motion during the motions hearing on March 21, 2007; and

2. Defendant's Motion to Suppress Statements, Admissions, and Answers (Doc. No. 17) be **DENIED**.

Dated: April 10, 2007                           s/Jeanne J. Graham
                                                JEANNE J. GRAHAM
                                                United States Magistrate Judge

Pursuant to D. Minn. LR 72.2(b), as modified by the Court below, Defendant may object to this Report and Recommendation by filing and serving specific, written objections on or before Friday, April 20, 2007. The Government may file any response to the defendant's objections, if any, on or before Wednesday, April 25, 2007. Any objections or responses filed under this rule shall not exceed 3,500 words. A District Judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit. Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.